THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
**(Northern Division)**

Lynnette Jackson
c/o Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, Maryland 21202
(County of Residence: Carroll County),

        Plaintiff,

    v.                                            Civil Action No.: 1:21-cv-00426

Sprint/United Management Company
6200 Sprint Parkway
Overland Park, Kansas 66251
    Serve on: CSC-Lawyers Incorporating
    Service Company
    7 St. Paul Street, Suite 820
    Baltimore, Maryland 21202,

and

T-Mobile US, Inc. f/k/a Sprint Corporation
12920 Southeast 38th Street
Bellevue, Washington 98006
    Serve on: CSC-Lawyers Incorporating
    Service Company
    7 St. Paul Street, Suite 820
    Baltimore, Maryland 21202,

        Defendants.

\*   \*   \*   \*   ooo0ooo   \*   \*   \*   \*

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Lynnette Jackson, by her undersigned counsel, files this complaint against Sprint/United Management Company ("Sprint") and T-Mobile US, Inc., as successor in interest to Sprint Corporation, and alleges as follows:

## INTRODUCTION

1. This action arises from unlawful disability-based employment discrimination and retaliation by Sprint against Lynnette Jackson, in violation of the Family and Medical Leave Act of 1993 ("FMLA") and Titles I and V of the Americans with Disabilities Act of 1990, as amended ("ADA"). Ms. Jackson, who was diagnosed with Multiple Sclerosis ("MS") in 2012, worked for Sprint at its store in Columbia, Maryland, from January 2018 until February 2019. During this time, she was promoted; fulfilled her responsibilities in the titles of retail sales consultant, key holder, "Apple Master," and "Samsung Elite"; and was often commended for a job well done by the store's general managers. Nonetheless, on February 22, 2019—less than three weeks after Ms. Jackson was approved for leave under the FMLA because of her disability and just days after using such leave—Sprint fired her. Ms. Jackson was fired because of her disability and in retaliation for her entitlement to leave under the FMLA. As a result of the unlawful discrimination and retaliation that Ms. Jackson endured, her MS, which is worsened by stress, has been exacerbated. This lawsuit seeks redress for the injuries Ms. Jackson sustained as a result of Defendants' unlaw misconduct.

## JURISDICTION

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

## VENUE

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the unlawful conduct alleged herein occurred in this District.

## PARTIES

4. Plaintiff Lynnette Jackson is an individual living in Westminster, Maryland and is an otherwise qualified individual with a disability within the meaning of the ADA, 42 U.S.C. §§ 12111(8) and 12102. Ms. Jackson was employed at Sprint Store #153, in Columbia, Maryland, from January 2018 until February 22, 2019, when she was wrongfully fired. Ms. Jackson was able to perform the essential functions of her job with reasonable accommodations. Ms. Jackson's physical disability substantially limits the operation of her major bodily functions, including but not limited to, neurological function. Having worked for Sprint for 12 months prior to applying for and receiving FMLA leave, Ms. Jackson is an "eligible employee" with a "serious health condition" within the meaning of the FMLA, 29 U.S.C. §§ 2611(2)(A), 2612(a)(1)(D).

5. Defendant Sprint/United Management Company ("Sprint"), a subsidiary of Sprint Corporation, is a large, national telecommunication corporation with more than 15 employees. Sprint is a covered entity under 42 U.S.C. § 12111(2) of the ADA and at all relevant times has been engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111(5). Sprint, a corporation engaged in an industry affecting commerce that employs 50 or more employees for each working day, is an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A).

6. Defendant T-Mobile US, Inc. ("T-Mobile"), successor in interest to Sprint Corporation, is a large, national telecommunication corporation. In or about April 2020, Sprint Corporation merged into T-Mobile. At all times relevant to this complaint, Ms. Jackson was employed by Sprint/United Management Company, which was then a wholly owned subsidiary of Sprint Corporation and is now, by virtue of the merger, a wholly owned subsidiary of T-

Mobile. T-Mobile is liable for the actions of its wholly owned subsidiary, Sprint. T-Mobile is a corporation with more than 15 employees. T-Mobile is a covered entity under 42 U.S.C. § 12111(2) of the ADA and at all relevant times has been engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111(5). T-Mobile, a corporation engaged in an industry affecting commerce that employs 50 or more employees for each working day, is an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A).

## FACTUAL ALLEGATIONS

**I.    Ms. Jackson is diagnosed with Multiple Sclerosis, a disease of the central nervous system.**

7.     Ms. Jackson is a 28-year-old, 2017 graduate of Morgan State University. In 2012, Ms. Jackson was diagnosed with MS. MS is a disease of the central nervous system. Ms. Jackson's symptoms vary depending on her stress level and include slurred speech, numbness, fatigue, and memory loss. When her stress level is high, Ms. Jackson experiences "exacerbations" or "flare-ups," which are the occurrence of new symptoms or the worsening of old symptoms. When this occurs, Ms. Jackson is susceptible to nosebleeds, skin infections, and/or optic neuritis—a disease that can and has resulted in blurred vision, sensitivity to light, and migraine headaches. As a result of Ms. Jackson's disability and the symptoms that accompany it, she is occasionally too ill to work.

**II.   Ms. Jackson becomes an employee for Sprint and excels in her job from January 2018 through early December 2018.**

8.     In January 2018, Ms. Jackson began her employment with Sprint at Store #153 in Columbia, Maryland as a retail sales consultant.

9.     Shortly after she began, she informed the store's General Manager at the time, Crystal Cauthen, that she had MS and told her of the symptoms that accompany the disease.

Ms. Jackson also informed Oladapo Gbangbalasa, an Assistant Manager during Ms. Jackson's employment, that she had MS.

10. Ms. Cauthen and Mr. Gbangbalasa accommodated Ms. Jackson's disability and allowed her to take time off when she needed it.

11. Despite Ms. Jackson's need for occasional time off, Ms. Cauthen (and other senior employees) often commended her for her good performance and promoted her to a "key holder" at the store, granting her unsupervised access to the store. Ms. Jackson was also promoted to the titles of "Apple Master" and "Samsung Elite," which required her to attend trainings on Apple and Samsung products and report what she learned back to her team.

12. Ms. Cauthen further demonstrated her satisfaction with Ms. Jackson's job performance in a March 20, 2019, text message, in which she told Ms. Jackson that she would "rehire [her] 5 times."

**III.   Jose Compean's discriminatory actions toward Ms. Jackson commenced shortly after his arrival to Sprint Store #153.**

13. Ms. Jackson was employed without incident until December 13, 2018, when Jose Compean replaced Ms. Cauthen as the General Manager of Sprint Store #153.

14. As she had with Ms. Cauthen, shortly after his arrival, Ms. Jackson informed Mr. Compean that she had MS and that her disability would occasionally affect her ability to work.

15. While under his supervision, Ms. Jackson occasionally communicated with Mr. Compean regarding her need for time off or to leave early or arrive late because of symptoms associated with MS, including nosebleeds.

16. In response, Mr. Compean often made negative comments about Ms. Jackson's disability, including asking on December 26, 2018, just two weeks after his arrival at the Columbia location, "Why are you always sick?"

5

17. Both Mr. Compean and Alpheus Pryor (who, as the store's Assistant Manager under both Ms. Cauthen and Mr. Compean, was also aware of Ms. Jackson's disability) repeatedly informed Ms. Jackson that her need for time off due to her disability was a hindrance to the store.

18. Neither Mr. Compean nor Mr. Pryor ever commented (orally or in writing) negatively on Ms. Jackson's work performance—the only negative comments she ever received were related to her disability and her need to take leave because of it.

19. Ms. Jackson, like other Sprint employees, also took time off for non-medical reasons. Taking leave for non-medical reasons was a regular practice at Sprint Store #153. Ms. Jackson knew of at least one nondisabled employee who was permitted to take unfettered leave. This individual often took extended time off to attend bowling tournaments, but was, to Ms. Jackson's knowledge, never warned against taking too much leave.

**IV.   Ms. Jackson applied and was approved for FMLA leave.**

20. On January 14, 2019, shortly after becoming eligible to apply for FMLA leave, Ms. Jackson emailed Sprint's LMG Call Out Team to explore her need for a reasonable accommodation—FMLA leave due to her MS and Mr. Compean's lack of "understanding of [her] illness."

21. In February 2019, Ms. Jackson submitted her application for FMLA leave.

22. After learning that Ms. Jackson had applied for leave under the FMLA, Mr. Compean called Ms. Jackson into his office and informed her that he had concerns that she would take advantage of her FMLA leave. He further explained that Ms. Jackson would not make it far in the company if she "catered" to her illness. Mr. Compean then compared Ms. Jackson's situation to that of a coworker, who apparently also had a disability. Mr. Compean

told Ms. Jackson that the coworker's health conditions were preventing him from being promoted within the company.

23. On February 7, 2019, Ms. Jackson was approved for intermittent FMLA leave of up to three times every three months.

24. Prior to being fired, Ms. Jackson used her FMLA leave on three occasions—February 15, 17, and 18—when experiencing repeated nosebleeds because of her MS.

## V. Mr. Compean terminates Ms. Jackson's employment because of her disability and in retaliation for her applying for and taking FMLA leave.

25. On February 22, 2019, less than three weeks after she was approved for leave under the FMLA and just days after she exercised her right to take such leave, Mr. Compean (in consultation with his supervisor, District Manager Richard ("Brian") Pierce) terminated Ms. Jackson's employment.

26. Without citing any particular mistake or shortcoming, Mr. Compean cited Ms. Jackson's work performance as the reason for her termination, which was unexpected as she had never received a poor performance review, in writing or otherwise, from Mr. Compean or Mr. Pryor. In fact, she had often been commended for her performance by Mr. Compean and Mr. Pryor (as well as by their predecessors, Ms. Cauthen and Mr. Gbangbalasa).

27. Throughout her employment, Ms. Jackson performed her job well—she sold the value of Sprint's devices, accessories, and service plans; maximized Sprint-customer connections; and did her best to save customers money, personalize their experience, and protect their investment. She also completed every other task of a Sprint key holder, as required to meet Sprint's performance expectations.

28. As evidenced by, among other things, Ms. Jackson's commendable performance, Mr. Compean's and Mr. Pryor's negative remarks, and the timing of her termination, the actual

reason for Ms. Jackson's discharge was her having applied for and received FMLA leave as a reasonable accommodation of her disability.

## CAUSES OF ACTION

## COUNT I

### (VIOLATION OF FAMILY AND MEDICAL LEAVE ACT)

29. Ms. Jackson re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

30. Ms. Jackson was an "eligible employee" with a "serious health condition" within the meaning of the FMLA. *See* 29 U.S.C. §§ 2611(2)(A), 2612(a)(1)(D).

31. Sprint is an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A).

32. As recognized by Sprint, Ms. Jackson was entitled to FMLA leave when she applied for such leave in February 2019.

33. Ms. Jackson engaged in a protected activity when she applied (and was approved) for FMLA leave and when she took FMLA-qualifying leave.

34. Sprint, including its agent Mr. Compean, was aware that Ms. Jackson applied and was approved for FMLA leave.

35. Sprint acted adversely against Ms. Jackson when it terminated her employment less than three weeks after she was approved for leave under the FMLA and just days after she used such leave.

36. As evidenced by the timing of her termination and the circumstances surrounding it, Ms. Jackson's applying for and taking FMLA leave was causally connected to Sprint's

adverse action. Mr. Compean's and Mr. Pryor's negative remarks regarding Ms. Jackson's disability provide further evidence of this causal connection.

37. The explanation Sprint provided at the time of Ms. Jackson's discharge—alleged performance issues—is pretextual. Prior to terminating her employment, Mr. Compean nor Mr. Pryor gave any indication that they were concerned with Ms. Jackson's performance.

38. By terminating Ms. Jackson's employment, Sprint has retaliated against Ms. Jackson because she exercised her right to apply for and to take leave under the FMLA.

39. This retaliation caused and continues to cause Ms. Jackson to suffer damages, including but not limited to lost wages and benefits and emotional distress.

40. T-Mobile is jointly and severally liable for the damages caused by these violations of Ms. Jackson's rights by its wholly-owned subsidiary, Sprint.

## COUNT II

### (VIOLATION OF TITLE I OF THE ADA)

41. Ms. Jackson re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

42. Ms. Jackson is a qualified individual with a disability under the ADA, 42 U.S.C. § 12101 *et seq.*, and its implementing regulations. Ms. Jackson was both actually disabled and regarded as being disabled by Mr. Compean and Mr. Pryor on the date they terminated her employment, February 22, 2019.

43. Sprint terminated Ms. Jackson's employment despite her performing her job at a level that met Sprint's expectations at the time of her discharge.

44. The circumstances of Ms. Jackson's discharge, including (1) Mr. Compean's and Mr. Pryor's negative remarks regarding her disability, (2) Sprint's termination of her

9

employment less than three weeks after Ms. Jackson was approved for FMLA leave and just days after she first exercised her right to take such leave, and (3) no prior indication that Mr. Compean nor Mr. Pryor were concerned with Ms. Jackson's performance, raise a reasonable inference of unlawful discrimination and that Ms. Jackson's disability was a "but-for" cause of her termination.

45. The explanation Sprint provided at the time of Ms. Jackson's discharge—alleged performance issues—is pretextual.

46. By terminating Ms. Jackson's employment, Sprint has discriminated against Ms. Jackson based on her disability.

47. This discrimination caused and continues to cause Ms. Jackson to suffer damages, including but not limited to lost wages and benefits and emotional distress.

48. On November 6, 2019, Ms. Jackson filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title I of the ADA by Sprint. The EEOC issued a Notice of Right to Sue on February 17, 2021. As a result, Ms. Jackson has exhausted all available administrative remedies prior to the filing of this Complaint.

49. T-Mobile is jointly and severally liable for the damages caused by these violations of Ms. Jackson's rights by its wholly-owned subsidiary, Sprint.

## COUNT III

**(VIOLATION OF TITLE V OF THE ADA)**

50. Ms. Jackson re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

51.     Ms. Jackson is a qualified individual with a disability under the ADA, 42 U.S.C. § 12101 *et seq*., and its implementing regulations. Ms. Jackson was both actually disabled and regarded as being disabled by Mr. Compean and Mr. Pryor on the date they terminated her employment, February 22, 2019.

52.     Ms. Jackson engaged in a protected activity when she applied (and was approved) for FMLA leave, a reasonable accommodation under the ADA.

53.     Sprint, including its agent Mr. Compean, was aware that Ms. Jackson applied and was approved for FMLA leave.

54.     Sprint acted adversely against Ms. Jackson when it terminated her employment less than three weeks after she was approved for leave under the FMLA and just days after she used such leave.

55.     As evidenced by the timing of her termination and the other circumstances surrounding it, Ms. Jackson's applying for FMLA leave was causally connected to Sprint's adverse action. Mr. Compean's and Mr. Pryor's negative remarks regarding Ms. Jackson's disability provide further evidence of this causal connection.

56.     The explanation Sprint provided at the time of Ms. Jackson's discharge—alleged performance issues—is pretextual. Prior to terminating her employment, neither Mr. Compean nor Mr. Pryor gave any indication that they were concerned with Ms. Jackson's performance.

57.     By terminating Ms. Jackson's employment, Sprint has retaliated against Ms. Jackson because she engaged in a protected activity—requesting a reasonable accommodation.

58.     As a large employer, Sprint was aware of its obligation not to retaliate against disabled employees for requesting a reasonable accommodation. In terminating Ms. Jackson's employment, Sprint recklessly disregarded that obligation.

59. This unlawful retaliation caused and continues to cause Ms. Jackson to suffer damages, including but not limited to lost wages and benefits and emotional distress.

60. On November 6, 2019, Ms. Jackson filed a charge of employment discrimination with the EEOC alleging violations of Title V of the ADA by Sprint. The EEOC issued a Notice of Right to Sue on February 17, 2021. As a result, Ms. Jackson has exhausted all available administrative remedies prior to the filing of this Complaint.

61. T-Mobile is jointly and severally liable for the damages caused by these violations of Ms. Jackson's rights by its wholly-owned subsidiary, Sprint.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff Lynnette Jackson respectfully requests that this Court:

(a) Enter a Declaratory Judgment stating that Defendants have violated the Americans with Disabilities Act by terminating Ms. Jackson's employment on the basis of her disability;

(b) Enter a Declaratory Judgment stating that Defendants have violated the Americans with Disabilities Act and the Family and Medical Leave Act by retaliating against Ms. Jackson because she requested and took FMLA leave;

(c) Award Ms. Jackson back pay from the date of her wrongful termination to the date that judgment is rendered in this action;

(d) Award Ms. Jackson compensatory and punitive damages;

(e) Award Ms. Jackson her reasonable attorneys' fees and costs, pursuant to 29 U.S.C. § 2617(a)(3) and 42 U.S.C. § 12205; and

(f) Award such other further relief as justice may require.

Dated: February 19, 2021					Respectfully submitted,

									/s/ Anisha Queen
									_____
									Anisha S. Queen (Bar No. 20766)
									Andrew D. Freeman (Bar No. 03867)
									Brown, Goldstein & Levy, LLP
									120 E. Baltimore Street, Suite 2500
									Baltimore, Maryland  21202
									Telephone:  (410) 962-1030
									Facsimile:  (410) 385-0869
									aqueen@browngold.com
									adf@browngold.com

									*Attorneys for Plaintiff Lynette Jackson*

## DEMAND FOR JURY TRIAL

Plaintiff Lynnette Jackson demands a trial by jury on all causes of action so triable.

                                                                                                     _____
                                                                                                     Anisha S. Queen

Dated:  February 19, 2021