IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **LYNNETTE JACKSON,**<br><br>**Plaintiff,**<br><br>v.<br><br>**SPRINT/UNITED MANAGEMENT CO.,** *et al.*,<br><br>**Defendants.** | **Civil Action No. RDB-21-00426** |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE*

In this lawsuit, Plaintiff Lynnette Jackson alleges that Defendants Sprint/United Management Company and T-Mobile US, Inc., f/k/a Sprint Corporation (collectively, "Sprint") terminated her employment in violation of the Family and Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA"). Specifically, Ms. Jackson alleges that Sprint, through Jose Compean—Ms. Jackson's supervisor at the time—terminated her employment discriminatorily and in retaliation for her taking FMLA leave because of her Multiple Sclerosis ("MS"), a chronic neurological condition that causes Ms. Jackson to experience numbness, skin infections, nosebleeds, chronic fatigue, and blurred vision. The record shows that while working for Sprint, Ms. Jackson was awarded new titles, commended for her performance by managers and customers, and offered promotions within the company by Crystal Cauthen, who, as a District Manager, had the authority to promote Ms. Jackson. Nonetheless, in February 2019, just three weeks after Ms. Jackson applied for FMLA leave because of her MS, less than three weeks after she was approved for FMLA leave, and just four days before she first exercised her right to take such leave, Mr. Compean unlawfully fired her.

In its Motion *in Limine*, Sprint requests—in a case involving alleged discrimination and retaliation *because of Ms. Jackson's MS* and with clear evidence of Ms. Cauthen's willingness and ability to promote Ms. Jackson to higher positions within the company—that the Court preclude Ms. Jackson from presenting evidence regarding her MS and demonstrating her earning potential had she been promoted (and not unlawfully discharged) by Sprint. Sprint also seeks to preclude Ms. Jackson from introducing evidence of front pay at trial. Ms. Jackson addresses each request below.

## **ARGUMENT**

**I.   Ms. Jackson does not intend to present evidence specific to front pay damages to the jury, although she does plan to request that the Court order such damages following a post-trial hearing.**

In her Complaint, Ms. Jackson, although not specifically requesting front pay, requested that the Court "[a]ward such other further relief as justice may require." ECF No. 1, Compl. 12. In her initial responses to Sprint's First Set of Interrogatories, sent on May 18, 2021, Ms. Jackson indicated that she was, in addition to other damages, seeking front pay. *See* Ex. 1, Pl.'s Resp. to Defs.' Interrog. 3. Sprint has therefore been on notice that Ms. Jackson seeks front pay damages since, at least, May 18, 2021. Ms. Jackson has amended her answers to Sprint's interrogatories to detail her front pay demand. *See* Ex. 2, Pl.'s Am. Resp. to Defs.' Interrog. 3. Sprint's argument that Ms. Jackson should be precluded "from making any statements or arguments or introducing evidence regarding front pay because she did not include them in her Complaint's Prayer for Relief or Answers to Interrogatories," Def.'s Mem. 3, is therefore meritless.

In the Fourth Circuit, front pay damages are to be calculated by the Court at a separate hearing after trial. *See Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 307 (4th Cir. 1998). Ms. Jackson therefore does not intend to present evidence specific to front pay damages at trial but plans to seek such damages from the Court thereafter.

**II.     The Court should not limit Ms. Jackson's presentation of evidence regarding her back-pay damages.**

"To make the plaintiff whole, the award of back pay should be the difference between what the employee would have earned had the wrongful conduct not occurred from the period of termination to judgment, and the actual earnings during that period." *Ford v. Rigidply Rafters, Inc.*, 984 F. Supp. 386, 389 (D. Md. 1997). Ms. Jackson is permitted to account for any promotions she would have reasonably received but for Sprint's discriminatory and retaliatory conduct when calculating back pay. *Hylind v. Xerox Corp.*, 31 F. Supp. 3d 729, 741–42 (D. Md. 2014), aff'd, 632 Fed. Appx. 114 (4th Cir. 2015) (awarding back pay based, in part, on "reasonably expected salary increases and to account for inflation and wage growth"); *see also Crump v. United States Dep't of Navy*, 205 F. Supp. 3d 730, 747 (E.D. Va. 2016) ("In calculating a back pay award, the Court should include other kinds of employment compensation, such as fringe benefits and reasonably anticipated salary increases, in addition to a plaintiff's base wages or salary.").

At the time of her termination, Ms. Jackson was a retail consultant at Sprint Store #153. At her deposition, Ms. Jackson testified that she "was excelling [as a retail consultant], and "loved [Sprint]," "the people [she] worked with, and "[her] customers." Ex. 3, Jackson Dep. 297:1–21. She further testified that she "saw [herself] building a career with [Sprint]." *Id.* Crystal Cauthen, the General Manager at Sprint Store #153 from April to December 2018, testified that as early as October 2018, she wanted to promote Ms. Jackson to the next position, that of sales supervisor. Ex. 4, Cauthen Dep. 107:18–108:5; *see also* Ex. 5, Text Messages between C. Cauthen and L. Jackson (Oct. 31, 2018). By December 2018, Ms. Cauthen, who had recently become a District Manager, wanted to promote Ms. Jackson to the position of sales supervisor or

3

assistant store manager and had the authority to do so.[1] Ex. 4, Cauthen Dep., 111:4–112:19, 113:22–116:16; *see also* Ex. 6, Text Messages between C. Cauthen and L. Jackson (Dec. 12, 2018). Ms. Jackson was excited about the prospect of serving in either position. *See id*.

In light of her high regard for Sprint, her commitment to building a career there, and Ms. Cauthen's willingness and ability to promote her, Ms. Jackson reasonably expected to be promoted to be a sales supervisor and/or assistant store manager at Sprint. Therefore, the back pay damages calculations Ms. Jackson will present at trial account for her projected earnings had she been promoted and not wrongfully and unlawfully terminated. *See* Ex. 2, Pl.'s Am. Resp. to Defs.' Interrog. 3. Ms. Jackson's calculations as to what she would have earned had she been promoted are based on the testimony of one of Sprint's corporate designees, Angela Lindsey, who testified as to the average amount paid to retail consultants, sales supervisors, and assistant store managers at Sprint Store #153 from 2019 to 2021. Ex. 7, Lindsey Dep., 56:8–65:9. Such calculations align with the law on back pay damages calculations, and Ms. Jackson should be permitted to present them at trial. *See Johnson v. Ryder Truck Lines, Inc.*, Civil Action No. 73-3, 1980 WL 215, at *11 (W.D. N.C. Aug. 8, 1980) (basing back pay on the "average earnings" of positions plaintiffs would have held if "they had not been victims of discrimination").

In arguing otherwise, Sprint claims that Ms. Jackson's back pay damages—to the extent they are based on "the benefits she might have received had she been promoted"—are "speculative in nature" and "not based on any admissible evidence." Defs.' Mem. 5–6. However, Ms. Jackson's back pay damages calculations are far from speculative. They are based on (1) Ms. Jackson's stated desire to build a career at Sprint; (2) a *Sprint employee's* stated willingness

---

[1] The hierarchy of positions at Sprint Store #153 at the time of Ms. Jackson's employment was retail consultant, sales supervisor, and then assistant store manager. Ex. 4, Cauthen Dep., 112:10–13.

and ability to promote her to higher positions within the company; and (3) *Sprint's corporate designee's* representations as to the average amount paid to employees, in various positions, at Sprint Store #153 from 2019 to 2021.[2] As noted above, Ms. Jackson is permitted to offer and rely on all of this evidence when calculating her back pay damages.

At trial, Ms. Jackson will testify to her hopes of building a career at Sprint, which is admissible evidence.[3] Ms. Cauthen, as she has before, can testify to her willingness and ability to promote Ms. Jackson to the sales supervisor and assistant manager positions, also admissible evidence. And Ms. Jackson will read into evidence Ms. Lindsey's testimony regarding average amounts paid to employees at Sprint Store #153 from 2019 to 2021, which she is permitted to do under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 32(a)(3). Based on this evidence, the jury will be able to determine a non-speculative, substantiated back pay damages award.[4] The Court should therefore permit Ms. Jackson to present evidence and argument regarding her back pay damages, including evidence and argument pertaining to her likely promotion in the absence of Sprint's retaliatory and discriminatory conduct.[5]

---

[2] For these same reasons, Ms. Jackson's front pay damages are not speculative. As noted above, however, Ms. Jackson does not intend to present evidence specific to front pay damages at trial but will provide that evidence to the Court at a post-trial hearing.

[3] Ms. Jackson will also testify regarding what she earned while working for Sprint; what she has earned since leaving Sprint; and that, at Sprint, she worked (and planned to continue working), on average, a 40-hour work week.

[4] Sprint cites to *Naumov v. McDaniel College* for its holding that the plaintiff in that case could "not testify as to any opinions or calculations he may have regarding speculative future earnings." No. 15-482, 2017 WL 11457888, at *2 (D. Md. Dec. 14, 2017). Here, unlike in *Naumov*, Ms. Jackson will not be testifying as to *speculative* future earnings, but as to earnings based on concrete evidence, including evidence from Sprint's employees and corporate designee.

[5] Sprint summarily argues that Ms. Jackson cannot present argument or evidence regarding her earnings had she been promoted because she has not provided an expert to do so. Defs.' Mem. 3, 6. Sprint has presented no case law to support this position. The jury is capable of calculating damages, which will require only simple mathematical calculations (addition, subtraction, multiplication, and division), without need for an expert.

**III.     The Court should permit Ms. Jackson to present evidence regarding her MS.**

Ms. Jackson has had MS since 2012. Since that time, she has come to understand her disability and the specific impact it has on her and her day-to-day life. At trial, Ms. Jackson intends to present evidence regarding her MS to help jury members (some of whom may have never heard of MS or may have limited knowledge of the disease) understand the disability, her symptoms, and the impact it has on her life (an impact that may differ from others with MS). Where, as here, the jury is asked to decide whether, under the FMLA and ADA, Sprint unlawfully terminated Ms. Jackson in retaliation for seeking and taking FMLA leave *because of her MS*, it is important they understand the disability.

Not only is evidence regarding Ms. Jackson's MS necessary background information for the jury, but it is also directly relevant to Ms. Jackson's claims and Sprint's defenses. To establish a *prima facie* case of retaliation under the ADA, Ms. Jackson must establish that "'she engaged in a protected activity.'"[6] ECF No. 40, Mem. Op. 23. Under the ADA, "[a]n employee's request for a reasonable accommodation is a protected activity." *Laster v. NAI, The Michael Cos.*, No. CV TDC-18-3200, 2019 WL 3208060, at *3 (D. Md. July 16, 2019). "'A reasonable accommodation is one that enables a qualified individual with a disability to perform the essential functions of a position.'" ECF No. 40, Mem. Op. 23. (quoting *Scott v. Lori*, No. ELH-19-2014, 2020 WL 3833129, at *15 (D. Md. Jul. 8, 2020)).

Here, Ms. Jackson asserts that her request for FMLA leave because of her MS was a request for a reasonable accommodation under the ADA. *See, e.g.*, ECF No. 38, Pl.'s Br. 29–30. As implied in this Court's Memorandum Opinion, to assess whether Ms. Jackson's request was a reasonable accommodation—i.e., one that would allow her to perform the essential functions of a

---

[6] Ms. Jackson also intends to pursue a direct evidence theory of liability on her FMLA and ADA retaliation claims. *See* ECF No. 38, Pl.'s Br. 14–15, 28.

retail consultant—the jury must understand, at least, (1) the chronic, episodic nature of MS, (2) Ms. Jackson's MS symptoms, and (3) how occasional time off from work helped Ms. Jackson "ameliorate her symptoms during MS episodes" and "prevent[ed] her symptoms from escalating." Mem. Op. 26 (finding that "a jury could find that [Ms.] Jackson engaged in activity protected by the ADA when she submitted a request for intermittent FMLA leave" with the knowledge that she suffers from "a chronic neurological condition" and that time off from work helped her "ameliorate her symptoms during MS episodes without compromising her job" and "prevent[ed] her symptoms from escalating"). Ms. Jackson's MS, including details regarding her MS, is therefore directly relevant to Ms. Jackson's ADA retaliation claim.

Moreover, to prevail on both her FMLA and ADA retaliation claims, Ms. Jackson must demonstrate a causal connection between her protected activity—i.e., requesting and taking FMLA leave because of her MS—and her termination. *See* Mem. Op. 15, 23. Hostile comments regarding an employee's request for FMLA leave because of a disability can serve as evidence of a causal connection. *See Raith v. Johns Hopkins Univ.*, 171 F. Supp. 2d 515, 520 (D. Md. 2000). At trial, Ms. Jackson will testify regarding Mr. Compean's hostile comments about her MS and her occasional need for time off from work because of it. For example, Mr. Compean offensively asked Ms. Jackson "why [she] was always sick," Ex. 3, Jackson Dep. 231:22–234:17, as well as "[A]re you sick today[?], "[A]re you going to be good today[?]," "[A]re you going to be able to finish today[?]," *id.* at 241:9–17. For the jury to fully appreciate and understand the magnitude and offensiveness of Mr. Compean's comments, it needs to understand the chronic nature of MS, Ms. Jackson's symptoms, and the unexpected escalation in symptoms Ms. Jackson occasionally experienced. Thus, Ms. Jackson's MS is also directly relevant to the causal connection prong of her FMLA and ADA retaliation claims.

Lastly, Ms. Jackson anticipates that, as a defense to her ADA retaliation claim, Sprint will maintain that Mr. Compean did not know that Ms. Jackson had a disability. Not only is there evidence in the record explicitly demonstrating that this is not true, *see* Ex. 8, Defs.' Resp. Pl.'s Interrog. No. 12, *see also* Ex. 3, Jackson Dep. 141:3–142:3, 231:18–233:9, but there is also evidence in the record demonstrating that Mr. Compean undisputedly knew, at the very least, that Ms. Jackson had nosebleeds, a symptom of MS, Ex. 9, Compean Dep. 68:6–69:11. In order for the jury to use this information—i.e., that Mr. Compean undisputedly knew Ms. Jackson experienced nosebleeds, a symptom of MS—to infer, as it should, that Mr. Compean knew that Ms. Jackson had MS, it must be informed of her symptoms. Thus, Ms. Jackson's MS, particularly her symptoms, is relevant to Sprint's defenses.[7] For all of these reasons, Sprint's unsupported argument that evidence relating to Ms. Jackson's MS is "irrelevant to the outcome of the case," Defs.' Mem. 7, is meritless.

Similarly unsupported and meritless is Sprint's argument that "testimony regarding [Ms. Jackson's] MS is outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time." Defs.' Mem. 7. Notably absent from Sprint's brief is *any* case law supporting its argument that testimony regarding Ms. Jackson's MS would result in the dangers it lists. Nor is there any explanation as to *how* evidence regarding Ms. Jackson's MS would lead to the dangers it lists. Because it would not. In a case involving retaliatory termination in response to Ms. Jackson's need for FMLA leave *because of her MS*, the presentation of evidence describing to the jury Ms. Jackson's disability and how it affects her would not confuse any

---

[7] Should the Court grant Ms. Jackson's Motion for Reconsideration (ECF No. 44) and deny Sprint's motion for summary judgment on her wrongful discharge claim, Ms. Jackson will seek emotional distress damages. As Ms. Jackson testified at her deposition, the stress associated with her wrongful termination exacerbated her MS. Ex. 3, Jackson Dep. 289:13–291:15. Therefore, Ms. Jackson's MS and how it impacts her would also be relevant to her claim for damages.

issues, mislead the jury, or be a waste of time. Nor would it create unfair prejudice, let alone prejudice that would substantially outweigh the probative value (and relevance) of such evidence, as detailed above.

Because evidence regarding Ms. Jackson's MS is relevant to her claims and Sprint's defenses and would not result in any of the dangers warned against in Rule 403 of the Federal Rules of Evidence, Ms. Jackson should be permitted to present it at trial.

## CONCLUSION

For the foregoing reasons, the Court should not limit Ms. Jackson's evidence regarding back pay and should permit her to present evidence regarding her MS and therefore should deny Sprint's Motion *in Limine*.

Dated: September 23, 2022          Respectfully submitted,

/s/ Anisha Queen
Anisha S. Queen (Bar No. 20766)
Andrew D. Freeman (Bar No. 03867)
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, MD 21202
Tel: (410) 962-1030
Fax: (410) 385-0869
aqueen@browngold.com
adf@browngold.com

*Counsel for Plaintiff Lynnette Jackson*