IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **LYNNETTE JACKSON,**<br><br>**Plaintiff,**<br><br>v.<br><br>**SPRINT/UNITED MANAGEMENT COMPANY,** *et al.*<br><br>**Defendants.** | Civil Action No.  RDB-21-00426 |

**REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EVIDENCE REGARDING PLAINTIFF'S POTENTIAL FRONT AND BACK PAY DAMAGES AND MEDICAL CONDITION**

**I.     INTRODUCTION**

Defendants Sprint/United Management Company and T-Mobile US, Inc. f/k/a Sprint Corporation ("Sprint" or "Defendants") have moved the Court to preclude Plaintiff Lynnette Jackson from making any statements or arguments, or introducing evidence regarding: (1) the equitable remedy of front pay to the jury; (2) potential earnings[1] related to hypothetical promotions she would have received if she remained employed with Sprint at Store Number 153; and (3) immaterial evidence concerning Plaintiff's medical condition.

Ms. Jackson concedes that evidence regarding front pay should not be presented to the jury. Pl.'s Opp'n to Defendants' Motion *in limine* 2, ECF No. 54. On the other hand, Ms. Jackson argues that her back pay calculations should include promotions which she believes she would have received had she remained employed with Sprint at Store Number 153.  Not only has Ms. Jackson failed to proffer evidence that corroborates her belief that she would have been promoted at Store

---

[1] Defendants refer to Plaintiff's claimed lost wages under the Family Medical Leave Act ("FMLA") and back pay under the Americans with Disabilities Act ("ADA") as "back pay."

Number 153 (or any other Sprint store), but she arbitrarily selected a timeline for receiving such promotions that clearly demonstrates that her calculations of back pay are wholly speculative in nature and should be excluded at trial.

Ms. Jackson also contends that she should be permitted to testify in detail regarding her medical condition so the Court can determine (1) whether her request for FMLA leave was a reasonable accommodation under the ADA and (2) whether one of her supervisors, Jose Compean, knew she had Multiple Sclerosis ("MS").  The first question asks the jury to determine whether a request for FMLA leave is sufficient to demonstrate a request for reasonable accommodation under the ADA. The Court however already decided that issue in its April 20, 2022 Memorandum Opinion, ECF No. 40 at 25-26. That is the law of the case.

In addition, evidence of the nature of Plaintiff's MS, including her symptoms, would encourage the jury to speculate about Mr. Compean's knowledge of her MS.  Ms. Jackson should be precluded from testifying that Mr. Compean knew she had MS simply because she texted him that she was having a nosebleed. Ms. Jackson has not proffered any evidence which makes it probable that Mr. Compean made a connection between her nosebleeds and MS or any other chronic health condition.  Not only would Ms. Jackson's testimony regarding her report of a nosebleed lack probative value, but it would be unfairly prejudicial, mislead the jury, confuse the issues, and waste time where there is no dispute regarding her MS diagnosis.  Therefore, Ms. Jackson must be barred entirely from making any argument or introducing evidence related to the details of her MS.

II.   **LEGAL ARGUMENT**[2]

    A.   **Plaintiff Should be Precluded from Introducing Speculative Evidence of Lost Earnings**

As previously stated, the Court should preclude Plaintiff from introducing speculative evidence, or argument or statements related to hypothetical promotions Ms. Jackson believes she would have received if she had remained employed with Sprint at Store Number 153. Plaintiff argues that the "back pay damages calculations Ms. Jackson will present at trial account for her projected earnings had she been promoted" because she "reasonably expected to be promoted to be a sales supervisor and/or assistant store manager at Sprint." Pl.'s Opp'n 4. Ms. Jackson proffers the testimony of one of Plaintiff's supervisors, Crystal Cauthen, and Defendants' 30(b)(6) witness to support her contention that promotions and related lost earnings are not speculative. However, Ms. Jackson mischaracterizes Ms. Cauthen's testimony and fails to provide evidence to support the conclusion: (1) that Plaintiff would have been promoted if she remained employed at Store Number 153 and (2) the timeline for any such promotion. Therefore, the Court should preclude Plaintiff from introducing any such speculative evidence, or argument or statements related to her back pay.

Other than Ms. Jackson's self-serving testimony that she intended to build a career at Sprint, Plaintiff's only support for her claim, that she would have ever been promoted to become a Sales Supervisor, is her text messages with Ms. Cauthen when Ms. Cauthen was the Store Manager at Store Number 153 and District Manager in Kansas City, MO. However, Ms. Cauthen merely made an offhanded comment in a text message in October 2018, four months prior to Ms.

---

[2] As stated above, Ms. Jackson conceded that she cannot make any reference, argument, statement or produce any evidence relating to Plaintiff's claimed front pay damages before the jury. Therefore, Defendants request that the Court enter an order stating that all argument and evidence Plaintiff introduces related to front pay should be prohibited before the jury.

3

Jackson's termination, that she wanted to get rid of the current Sales Supervisor and "force" Ms. Jackson to take his position.  *See* Pl.'s Opp'n Ex. 6.  Ms. Jackson admittedly did not take this seriously as her response to Ms. Cauthen indicated that she was laughing.  *Id.*  When asked about this message, Ms. Cauthen could not even recall why she at one point may have thought that Ms. Jackson was ready to be promoted to the Sales Supervisor position.  *See* Pl.'s Opp'n Ex. 4 at 108:6-8.  Noticeably absent is any proffer that Sprint had promotion guidelines, lock step promotions, Ms. Jackson met the minimum qualifications for the Sales Supervisor position or that Ms. Jackson actually was offered a promotion prior to her termination, which would have guaranteed Plaintiff a promotion to Sales Supervisor.

Also, contrary to Plaintiff's assertion, Ms. Cauthen testified that as Store Manager she was not authorized to promote Plaintiff unilaterally to Sales Supervisor, only with the approval of Brian Pierce, the District Manager.  *Id.* at 113:6-16.  Ms. Cauthen ultimately did not request approval to promote Plaintiff to Sales Supervisor because she had to keep the incumbent.  *Id.* at 112:20-113:5.  Therefore, Ms. Jackson cannot show that she would have eventually been promoted to the Sales Supervisor position at Store Number 153 (and when)  had she remained with Sprint, and any speculative evidence or argument regarding such should be excluded.

Likewise, Ms. Jackson intends to speciously argue that the Court should calculate her lost earnings assuming that she would have been promoted to Assistant Store Manager for Store Number 153.  Yet, Plaintiff proffers no testimony of Ms. Cauthen or any supervisor to show that Ms. Jackson was ever considered to be ready to be an Assistant Store Manager for Store Number 153; much less promotion guidelines or practices that would have guaranteed her a promotion to Assistant Store Manager and the timeframe.  Ms. Jackson merely points to a text message in December 2018 with Ms. Cauthen after Ms. Cauthen moved to a ***different*** Sprint store in Kansas

City where Ms. Cauthen asked Plaintiff if she would be willing to move to be a Sales Supervisor or Assistant Store Manager in Kansas City.  *See* Pl's Opp. Ex. 4 at 111:12-112:19.  Even though Ms. Cauthen was recruiting at that time, there is no evidence that she ever actually offered Ms. Jackson an Assistant Store Manager position. Also, Ms. Jackson has proffered no evidence to connect Ms. Cauthen's recruiting in Kansas City to promotion decisions at Store Number 153.  Thus, Ms. Jackson should be precluded from arguing at trial that she would have been promoted to Assistant Store Manager if she had not been terminated.

Moreover, Ms. Jackson contends that her lost earnings are not speculative because they are based on Defendants' 30(b)(6) witness's deposition testimony regarding the compensation for Sprint's Sales Supervisors, Assistant Store Managers, and Store Managers at Store Number 153.  Although Defendants do not dispute the average compensation for these positions at Store Number 153, Ms. Jackson does not proffer any evidence that overcomes the presumption that she was an at-will employee or of the promotion history of Sprint's Sales Supervisors, Assistant Store Managers, and Store Managers at Store Number 153.  As the timeline for Ms. Jackson's "projected earnings" is wholly speculative, the compensation for Sprint's Sales Supervisors, Assistant Store Managers, and Store Managers at Store Number 153 likewise must be excluded.

Prior to Plaintiff's Opposition to Defendants' Motion, Ms. Jackson put forth no testimony, written discovery answers or other evidence that stated the value of what Plaintiff claims she could have earned if she remained employed with Sprint and was hypothetically promoted from Retail Sales Consultant.  Ms. Jackson conceded this point in her Opposition and therefore supplemented her Objections and Responses to Defendants' Interrogatories one year after the August 19, 2021

Discovery Deadline and less than a month before trial.[3]  Accordingly, for this reason alone the Court should exclude evidence regarding back pay.

Regardless of whether Plaintiff's lost earning calculation disclosures were untimely, they remain speculative, and Ms. Jackson should be precluded from making such an argument at trial. Under Federal Rule of Evidence 701, plaintiffs "may not testify as to any opinions or calculations [they] may have regarding speculative future earnings." *Naumov v. McDaniel Coll., Inc.*, No. 15-482, 2017 U.S. Dist. LEXIS 225122, at *4 (D. Md. Dec. 14, 2017).  Citing *Hylind v. Xerox Corp.* and *Crump v. United States Dep't of Navy*, Plaintiff argues that she "is permitted to account for any promotions she would have reasonably received but for Sprint's discriminatory and retaliatory conduct when calculating back pay."  Pl.'s Opp'n 3 (citing 31 F. Supp. 3d 729, 741-42 (D. Md. 2014), *aff'd*, 632 Fed. Appx. 114 (4th Cir. 2015); 205 F. Supp. 3d 730, 747 (E.D. Va. 2016)).

Not only do neither of these cases reference promotions, but both only account for lost earnings to include "***reasonably expected*** salary increases."  *Hylind*, 31 F. Supp. 3d at 741-42 (emphasis added) (looking at the plaintiff's last four years of salary increases to anticipate future raises she would have received); *Crump*, 205 F. Supp. 3d at 747 (including the plaintiff's annual raise in the back pay wages calculation).  In this case, Ms. Jackson has not put forth any evidence of her anticipated salary increases as a Retail Sales Consultant.  Rather, in her response to Interrogatories, Ms. Jackson for the first time claims that she would have been promoted to Assistant Store Manager by the arbitrary date of January 1, 2020.  Not only does Ms. Jackson not account for a time period as a Sales Supervisor, the level before Assistant Store Manager, in her calculations or explain why she would have been promoted straight to Assistant Store Manager,

---

[3] As Defendants also stated in their initial brief, Plaintiff could have supplemented her responses to Defendants' Interrogatories after Defendants' 30(b)(6) testimony on the topic.  Given that Plaintiff did not timely make this disclosure, Ms. Jackson should not be permitted to testify to purported back pay calculations about which Defendants were not notified until less than a month before trial.

but she fails to provide the reasoning for why she randomly selected two years for the timeframe it would have taken her to be promoted to Assistant Store Manager.  Nowhere does Ms. Jackson cite to any testimony or admissible evidence regarding her estimated trajectory for such promotions, thus such argument should be precluded.[4]

Although Ms. Jackson claims that the jury's calculation of back pay will involve "only simple mathematical calculations (addition, subtraction, multiplication, and division), without need for an expert", Pl.'s Opp'n 5 n.5, this claim lacks sufficient foundation and is unduly speculative, especially given that Plaintiff has neither provided an expert to testify about projections for her future earnings nor proffered testimony from witnesses competent to testify about the promotion history of an at will Retail Sales Consultant at Store Number 153.  Without evidence to show that Ms. Jackson would have ultimately been promoted to Sales Supervisor and Assistant Store Manager had she not been terminated in February 2019, Plaintiff's subjective impression of the earnings and benefits she might have received had she been promoted is not based on any admissible evidence. Thus, the Court should prohibit Ms. Jackson from introducing evidence, or argument or statements related to any back pay.

      **B.**    **The Court Should Exclude Any Evidence of Plaintiff's Medical Condition**

Defendants have asked the Court to prevent Ms. Jackson from making any reference, argument or statement, or introducing any evidence relating to Plaintiff's underlying medical condition.  Plaintiff's only claims for relief remaining against Sprint are retaliation under the FMLA and ADA.  Plaintiff argues that for the jury to determine whether her request for FMLA leave was a reasonable accommodation under the ADA, the jury needs to hear testimony concerning "(1) the chronic, episodic nature of MS, (2) Ms. Jackson's MS symptoms, and (3) how

---

[4] Given that Plaintiff barely was employed 12 months and was a non-supervisory employee, Ms. Jackson would not have sufficient data based on personal observations to testify as to her anticipated trajectory with any certainty.

occasional time off from work helped Ms. Jackson 'ameliorate her symptoms during MS episodes' and 'prevent[ed] her symptoms from escalating.'" Pl.'s Opp'n 7. Based on the doctrine of the law of the case, the jury does not need to decide whether a request for FMLA leave was a reasonable accommodation under the ADA. The Court already has decided that issue in ruling on Defendants' motion for summary judgment, and Defendants do not intend to re-litigate the issue before the district court.[5] *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988).

Ms. Jackson has not shown the need to present testimony on the nature of MS or how time off from work helped her with her symptoms when the parties do not dispute that: (1) Plaintiff suffers from MS; (2) her MS qualified her for FMLA leave and (3) MS is a disability under the ADA. Rather, any probative value regarding the details of Plaintiff's MS is outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time.

Ms. Jackson claims testimony regarding her MS symptoms is necessary to demonstrate that one of Plaintiff's supervisors, Jose Compean, knew she had MS. However, Plaintiff has failed to show how testifying to her medical condition would allow the jury to make such an inference. Defendants anticipate that Ms. Jackson will seek to introduce her text messages with Mr. Compean regarding nosebleeds, but Plaintiff does not point to any evidence that Mr. Compean knew that nosebleeds were related in any way to her MS. Again, the parties do not dispute that Plaintiff was qualified for FMLA leave or that Mr. Compean knew she was approved for such leave. However, Mr. Compean denies that he knew that Plaintiff had Multiple Sclerosis prior to her termination. *See* ECF No. 37-1 (Def.'s Mot. for Summ. J.) Exhibit D, Compean Dep. 62:19-63:3.[6]

---

[5] Defendants reserve the right to appeal this ruling or re-litigate this issue if there is a change in controlling legal authority or other change in circumstance.

[6] Defendants' response to Interrogatory No. 12 also does not support the inference that Mr. Compean was aware that Ms. Jackson was diagnosed with MS. Mr. Compean simply knew that Plaintiff was approved for FMLA leave and had a medical condition. Pl. Opp'n Ex. 8.

Accordingly, there is little probative value to the jury hearing Ms. Jackson testify regarding the symptoms of her MS and such testimony would be unfairly prejudicial, will confuse the issues, will mislead the jury, and will certainly waste time given the undisputed facts. Therefore, Ms. Jackson must be barred entirely from making any argument or introducing evidence related to the details of her MS.

### III. CONCLUSION

Based on the foregoing, Defendants respectfully ask the Court to grant their Motion and preclude Plaintiff from making any statements or arguments, or introducing evidence regarding: (1) front pay damages before the jury; (2) potential lost earnings related to hypothetical promotions she would have received if she remained employed with Sprint; and (3) Plaintiff's medical condition.

Dated: September 30, 2022

Respectfully submitted,

*/s/ Joseph B. Greener*
Ethan D. Balsam (Bar No. 18761)
Joseph B. Greener
Alison N. Davis (Bar No. 27987)
LITTLER MENDELSON, P.C.
815 Connecticut Avenue, N.W., Suite 400
Washington, D.C. 20006-4046
Tel: 202.842.3400
Fax: 202.403.3128
ebalsam@littler.com
jgreener@littler.com
andavis@littler.com

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on September 30, 2022, a copy of the foregoing was served with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

> Anisha S. Queen
> aqueen@browngold.com
> Andrew D. Freeman
> adf@browngold.com
> Brown, Goldstein & Levy, LLP
> 120 E. Baltimore Street, Suite 2500
> Baltimore, Maryland 21202
>
> *Attorneys for Plaintiff*

        */s/ Joseph B. Greener*
        Joseph B. Greener