IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LYNETTE JACKSON, | * | |
| Plaintiff, | * | |
| v. | * | |
| SPRINT/UNITED MANAGEMENT COMPANY *et al.*, | * | Civil Action No. RDB-21-0426 |
| | * | |
| Defendants. | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM ORDER**

Plaintiff Lynette Jackson ("Jackson") brings this employment discrimination action against Defendants Sprint/United Management Co. and T-Mobile U.S., Inc. (collectively, "Sprint"), alleging violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, as well as the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Jackson is a former Sprint employee who was terminated on February 22, 2019—and alleges that this termination constitutes discrimination on the basis of her disability and retaliation under the FMLA and ADA. (Mem. Op. 1, ECF No. 40; *see also* Pl.'s Resp. Opp. Summ. J. 1–2, ECF No. 38.) On April 20, 2022, this Court entered an order (ECF Nos. 40, 41) granting in part and denying in part Sprint's Motion for Summary Judgment (ECF No. 37). Specifically, this Court granted summary judgment as to Count II, alleging discrimination under the ADA, and denied summary judgment as to Count I, alleging FMLA retaliation, and Count III, alleging ADA retaliation. (ECF No. 40.)

Currently pending is Jackson's Motion for Reconsideration (ECF No. 44).[1] Through the instant motion, Jackson seeks reconsideration of the portion of this Court's opinion and order granting summary judgment as to Count II, arguing that her testimony is sufficient to sustain a *prima facie* case for discrimination under the Americans with Disabilities Act when applying the *McDonnell Douglas* burden shifting framework. (Pl.'s Mot. Reconsideration 1.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, Jackson's Motion for Reconsideration (ECF No. 44) is **GRANTED.**

## BACKGROUND

The factual and procedural background of this case was discussed at length in this Court's April 20, 2022 Memorandum Opinion. *See Jackson v. Sprint/United Mgmt. Co.*, ___ F. Supp. 3d ___, 2022 WL 1172319, at ** 1–5 (D. Md. 2022). (*See* Mem. Op. 2–10, ECF No. 40.) As relevant here, Plaintiff Lynette Jackson was employed as a Retail Sales Consultant for Defendants Sprint/United Management Co. and T-Mobile U.S., Inc. (collectively, "Sprint") between January 2018 and February 2019. *Id.* at *1. Jackson suffers from multiple sclerosis ("MS"), a chronic and episodic neurological condition that leaves her immunocompromised and produces debilitating symptoms. *Id.* at *3. On February 7, 2019, Jackson was approved for intermittent FMLA leave to ameliorate her symptoms during MS episodes. *Id.* She took

---

[1] Also pending are Sprint's Cross-Motion for Reconsideration (ECF No. 46) and Jackson's Motion to Strike Sprint's Cross-Motion for Reconsideration (ECF No. 47). By notice dated May 25, 2022, Sprint has elected to voluntarily withdraw its motion for reconsideration, without prejudice to its authority to re-file. (ECF No. 48.) Accordingly, Sprint's Cross-Motion for Reconsideration (ECF No. 46) is hereby **DENIED**, and Jackson's Motion to Strike (ECF No. 47) is **DENIED** as moot.

leave on February 17 and 18, 2019, and was terminated on February 22, 2019—two weeks after her FMLA leave was approved, and two days after it was first exercised. *Id.*

Jackson filed suit on February 19, 2021, bringing claims for retaliation under the FMLA (Count I), discrimination under the ADA (Count II), and retaliation under the ADA (Count III). (Compl. ¶¶ 29–61.) On April 20, 2022, this Court denied summary judgment as to Count I, finding that Jackson's evidence regarding the temporal proximity of her FMLA leave request, her manager's admonition not to take advantage of her FMLA leave, Sprint's inconsistent explanations for her discharge, and Sprint's potential violations of its progressive discipline policies collectively presented a genuine dispute of material fact regarding FMLA retaliation. *Jackson*, 2022 WL 1172319 at **6–9. This Court also denied summary judgment as to Count III, holding that "a prospective request for periodic FMLA leave" to accommodate "an ongoing ailment" may constitute a request for reasonable accommodation under the ADA—allowing the same evidence to suffice as to ADA retaliation. *Jackson*, 2022 WL 1172319 at **10–12 (quoting *Isley v. Aker Phila. Shipyard, Inc.*, 275 F. Supp. 3d 620, 631 (E.D. Pa. 2017); *Beishl v. Cnty. of Bucks*, No. 18-2835, 2018 WL 6812132, at *4 (E.D. Pa. Dec. 27, 2018)); *see also Mattison v. Md. Transit Admin.*, No. JKB-21-00168, 2021 WL 4503566, at *8 (D. Md. Oct. 1, 2021) (finding employee had alleged a request for reasonable accommodation "in the form of a request for intermittent FMLA leave and notification to his supervisor that he was taking such leave" (citing *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 147 (3d Cir. 2017))).

As relevant to the instant motion, this Court granted summary judgment as to Count II, concluding that Jackson failed to produce "sufficient evidence of disability discrimination

3

or causation." *Jackson*, 2022 WL 1172319, at **9–10. Specifically, this Court concluded that "Jackson's case on these elements relies entirely on remarks from Compean and Pryor, who she claims made an 'ongoing joke' out of her MS." *Id.* at *9. This Court noted that Jackson "exclusively relie[d] on her testimony as evidence of the alleged remarks," and concluded that this evidence was insufficiently probative to present a genuine dispute of material fact regarding discriminatory animus or causation. *Id.* at *10 (citing *Harris v. Home Sales Co.*, 499 F. App'x 285, 291 (4th Cir. 2012); *Mackey v. Shalala*, 360 F.3d 463, 469–70 (4th Cir. 2004); *Evans v. Tech. Applications & Servs. Co.*, 80 F.3d 954, 959 (4th Cir. 1996)).

Jackson filed the instant Motion for Reconsideration on May 4, 2022 (ECF No. 44).

## STANDARD OF REVIEW

Two rules enable a court to reconsider a final judgment: Rule 59(e) authorizes a district court to alter, amend, or vacate a prior judgment, while Rule 60 provides for relief from judgment. *See Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 n.4 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 115 (2011). As this Court explained in *Cross v. Fleet Reserve Ass'n Pension Plan*, WDQ-05-0001, 2010 WL 3609530, at *2 (D. Md. Sept. 14, 2010):

> A party may move to alter or amend a judgment under Rule 59(e), or for relief from a judgment under Rule 60(b). *See* Fed. R. Civ. P. 59(e) & 60(b). A motion to alter or amend filed within 28 days of the judgment is analyzed under Rule 59(e); if the motion is filed later, Rule 60(b) controls. *See* Fed. R. Civ. P. 59(e); *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 280 (4th Cir. 2008); *In re Burnley*, 988 F.2d 1, 2-3 (4th Cir. 1992).

4

(footnote omitted). Jackson moves for reconsideration pursuant to Rule 59(e), and properly filed her motion on May 4, 2022, only 14 days after this Court's opinion and order dated April 20, 2022.[2]

The United States Court of Appeals for the Fourth Circuit has repeatedly recognized that a final judgment[3] may be amended under Rule 59(e) in only three circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *See, e.g., Gagliano v. Reliance Std. Life Ins. Co.*, 547 F.3d 230, 241 n.8 (4th Cir. 2008); *accord Fleming v. Maryland Nat'l Cap. Park & Planning Comm'n*, DKC-11-2769, 2012 WL 12877387, at *1 (D. Md. Mar. 8, 2012). A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *see also Kelly v. Simpson*, RDB-16-4067, 2017 WL 4065820, at *1 (D. Md. Jan. 26, 2017); *Lynn v. Monarch Rec. Mgmt, Inc.*, 953 F. Supp. 2d 612, 620 (D. Md. 2013). "The district court has considerable discretion in deciding whether to modify or amend a judgment." *Fleming*, 2012 WL 12877387, at *1.

Motions for reconsideration are "an extraordinary remedy which should be used sparingly." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009); *Peckey v. Bank of Am.*, No. RDB-14-433, 2016 WL 6951940, at *1 (D. Md. Nov. 28, 2016); *Siple v. First Franklin Fin.*

---

[2] Jackson also seeks reconsideration pursuant to Local Rule 105.10, which provides in full: "Except as otherwise provided in Fed. R. Civ. P. 50, 52, 59, or 60, any motion to reconsider any order issued by the court shall be filed within the Clerk not later than fourteen (14) days after the entry of the order." L.R. 105.10. Although Local Rule 105.10 governs the timeframe for filing a Motion for Reconsideration, it neither provides an alternative vehicle for such a motion, nor does it supplant the requirements of the Federal Rules of Civil Procedure.

[3] Rule 59(e) applies only to final judgments. *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991).

*Corp.*, No. RDB-14-2841, 2015 WL 6163791, at *2 (D. Md. Oct. 19, 2015) ("Where a party seeks reconsideration on the basis of manifest error, the earlier decision cannot be 'just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." (quoting *TFWS*, 572 F.3d at 194)). "Such limitations on Rule 59(e) motions are necessary because '[w]ere it otherwise, then there would be no conclusion to motions practice, each motion becoming nothing more than the latest installment in a potentially endless serial that would exhaust the resources of the parties and the [C]ourt—not to mention its patience.'" *Travis X. C. v. Saul*, No. GJH-18-1210, 2020 WL 6684636, at *2 (D. Md. Nov. 12, 2020), *aff'd sub nom. Carr v. Kijakazi*, No. 20-2226, 2022 WL 301540 (4th Cir. Feb. 1, 2022) (quoting *Pinney v. Nokia, Inc.*, 402 F.3d 430, 453 (4th Cir. 2005)) (alterations in original).

## ANALYSIS

Jackson faces a "high bar . . . to succeed on a Motion for Reconsideration." *Worsham v. Discount Power*, No. RDB-20-0008, 2021 WL 5742382, at *2 (D. Md. Dec. 1, 2021) (citation omitted). A litigant's "mere disagreement" with a ruling is not enough to justify a motion for reconsideration. *Lynn v. Monarch Rec. Mgmt, Inc.*, 953 F. Supp. 2d 612, 620 (D. Md. 2013). Accordingly, "the prior judgment cannot be 'just maybe or probably wrong; it must . . . strike the court as wrong with the force of a five-week-old, unrefrigerated dead fish.'" *Fontell v. Hassett*, 891 F. Supp. 2d 739, 741 (D. Md. 2012) (citation omitted). In other words, the Court's previous judgment must be "dead wrong." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009).

Jackson argues that this Court erred in concluding that her deposition testimony was insufficient to generate a genuine issue of material fact concerning discriminatory animus, as required to sustain a *prima facie* case for ADA discrimination under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework. (Mot. Reconsideration 1–2.) Through her motion and reply in support, Jackson challenges this Court's reliance on Fourth Circuit precedent for the proposition that Jackson's "own naked opinion, without more, is not enough to establish a *prima facie* case of [] discrimination." *Evans v. Tech. Applications & Servs. Co.*, 80 F.3d 954, 959 (4th Cir. 1996); *see also Harris v. Home Sales Co.*, 499 F. App'x 285, 291 (4th Cir. 2012); *Mackey v. Shalala*, 360 F.3d 463, 469–70 (4th Cir. 2004). (Mot. Reconsideration 3–5.) In distinguishing these authorities, Jackson highlights an error of law in this Court's opinion on summary judgment: A closer analysis of *Evans* reveals that the rule cited above was applied to a discrimination analysis by way of "direct and indirect methods of proof," and was not applied at the first stage of the *McDonnell Douglas* burden shifting analysis. (*Id.* 5.)

In *Evans v. Technology Applications & Services Co.*, 80 F.3d 954 (4th Cir. 1996), the Fourth Circuit addressed Title VII discrimination claims by an employee of a government technology contractor who alleged that she had been denied a promotion on the basis of sex. 80 F.3d at 957–58. The Fourth Circuit analyzed both methods of proof in order. *Id.* at 959 ("Evans might have offered direct or circumstantial evidence, or proceeded under the proof scheme set forth in *McDonnell Douglas*."). First, applying "ordinary principles of proof," the Fourth Circuit reasoned that "Evans must provide direct evidence of a purpose to discriminate or circumstantial evidence of sufficiently probative force to raise a genuine issue

7

of material fact." *Id.* (citing *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988)). Although Evans had testified regarding "an alleged comment by [the decisionmaker] that he would not allow her to become a supervisor," the Court concluded that this putative remark was insufficiently probative to survive summary judgment. *Id.* The comment at issue was neither "discriminatory on its face," nor was it "placed in any context that makes it so." *Id.* Accordingly, her "own naked opinion, without more, [was] not enough to establish a *prima facie* case of [] discrimination." *Id.* (quoting *Goldberg*, 836 F.2d at 848).

Second, the Fourth Circuit imposed the three-step burden-shifting analysis required by *McDonnell Douglas*, under which (1) the plaintiff "must first prove a *prima facie* case of discrimination by a preponderance of the evidence;" (2) the defendant "has an opportunity to present a legitimate, non-discriminatory reason for its employment action;" and (3) the presumption is rebutted and "the burden shifts back to the employee to show that the given reason was just a pretext for discrimination." *Id.* at 959–61. Applying this method of proof, the Fourth Circuit concluded that the same evidence that did not suffice as direct proof of discrimination was sufficient to meet the lightweight burden of establishing a *prima facie* case as contemplated by the *McDonnell Douglas* framework. *Id.* at 960 ("[W]e find that Evans has satisfied the 'relatively easy test' of showing that she, a qualified applicant, 'was rejected under circumstances which give rise to an inference of unlawful discrimination.'" (quoting *Young v. Lehman*, 748 F.2d 194, 197 (4th Cir. 1985))). Nevertheless, the employer was able to rebut the presumption of discrimination by demonstrating that company officials eliminated the position the plaintiff had applied for out of financial concerns, and that its duties had been reassigned to a more qualified alternative. *Id.* ("Job performance and relative employee

8

qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision."). Ultimately, Evans could offer no persuasive evidence of pretext: "Evans's unsubstantiated allegations and bald assertions concerning her own qualifications and the shortcomings of her co-workers fail to disprove TAS's explanation or show discrimination." *Id.* (citing *Goldberg*, 836 F.2d at 848).

On second view, Evans draws a distinction between the burden of proof required to sustain a discrimination claim by way of "direct and indirect proof," and the lightweight burden required to set forth a *prima facie* case of discrimination for the *McDonnell Douglas* test. A plaintiff's own testimony is not sufficiently probative to suffice as "direct evidence" of discrimination. *Goldberg*, 836 F.2d at 848. Moreover, establishing pretext at the third stage requires more: A plaintiff cannot rely "on his 'own assertions of discrimination'" to rebut an employer's legitimate justification for his discharge, *Adam v. Trs. of Univ. of N.C. Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (citation omitted), and must either adduce evidence that the employer's justification is "unworthy of credence," or offer other direct or circumstantial evidence "sufficiently probative of discrimination." *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004) (quoting *Texas Dep't of Cnty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). However, as the prima facie case is a "relatively easy test," Jackson's testimony should not have been discounted at the *prima facie* stage of the *McDonnell Douglas* analysis, and may prove sufficient to survive summary judgment under the unique facts of this case. *Evans*, 80 F.3d at 960. Accordingly, Jackson's Motion for Reconsideration (ECF No. 44) is hereby **GRANTED.** This Court will now revisit its evaluation of Count II.

As this Court noted in its summary judgment opinion, a prima facie case for wrongful discharge requires Jackson to show that: "(1) [she] is within the ADA's protected class; (2) [she] was discharged; (3) at the time of [her] discharge, [she] was performing the job at a level that met [her] employer's legitimate expectations; and (4) [her] discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Coursey v. Univ. of Md. E. Shore*, 577 F. App'x 167, 174 (4th Cir. 2014) (citing *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001)); *Harris v. Reston Hosp. Ctr., LLC*, 523 F. App'x 938, 947 (4th Cir. 2013) (per curiam); *EEOC v. Manu. & Traders Tr. Co.*, 429 F. Supp. 3d 89, 117 (D. Md. 2019). This *prima facie* case encompasses an implicit causation element: To support a wrongful discharge claim, the plaintiff's disability must be a "but-for" cause of her termination. *Gentry v. E.W. Partners Club Mgmt. Co., Inc.*, 816 F.3d 228, 235–36 (4th Cir. 2016). "Sprint does not dispute that Plaintiff's multiple sclerosis is a qualified disability under the ADA or that Plaintiff's termination was an adverse employment action." (Def.'s Mem. Supp. Summ. J. 18.) Rather, Sprint contests Jackson's job performance and argues that she fails to establish circumstances that give rise to a reasonable inference of discrimination. (*Id.*)[4]

First, for the reasons highlighted in this Court's summary judgment opinion, there are issues of material fact as to whether Jackson was performing her job at a level that met her employer's expectations. "'It is the perception of the decisionmaker which is relevant,' not the self-assessment of the plaintiff." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 960–

---

[4] Sprint also argues that Pierce and Compean were unaware of Jackson's multiple sclerosis. (Mem. Supp. 18 (citing Pierce Dep. 123:3-10; Compean Dep. 62:19-63:3).) This matter is disputed. As Sprint itself notes, "Plaintiff claims to have verbally told Mr. Compean that she has MS when he first started working in the store in December 2018—three months before her termination." (*Id.* n.2 (citing Jackson Dep. 141:3-142:3).)

61 (4th Cir. 1996) (quoting *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)). As noted throughout this Court's summary judgment opinion, Sprint claims that Jackson exhibited "repeated attendance and performance infractions" during her employment, highlighting concerns with punctuality and her sales performance in 2018. (Mem. Supp. 18.) These facts are in dispute, as Jackson offers evidence that each of her supervisors regarded her as a good employee. Crystal Cauthen, Oladapo Gbangbalasa, Adelphus Pryor, and Jose Compean admitted in deposition that it is "not realistic" to expect retail consultants to reach their goals every month, (Cauthen Dep. 91:7–15; Compean Dep. 107:6–108:22; Gbangbalasa Dep. 76:16–21; Pryor Dep. 88:17–89:2), and those same supervisors testified that they saw her as a "good performer" based on her sales record, (Cauthen Dep. 101:15–21; Compean Dep. 120:10–121:6; Gbangbalasa Dep. 79:13–20; Pierce Dep. 108:13–16). Jackson further adduces emails in which Compean highlighted her as a top seller, and text messages in which Cauthen expressed interest in hiring her as an assistant store manager. (*See* Mem. Op. 5–6.) This evidence is sufficient to generate a genuine dispute of material fact on this issue.

Second, for the reasons discussed herein, a jury could find Jackson was terminated "under circumstances that raise a reasonable inference of unlawful discrimination." *Coursey*, 577 F. App'x at 174. In her deposition, Jackson claimed that she informed her managers of her multiple sclerosis shortly after her employment with Sprint began. (Jackson Dep. 141:3–142:3, 233:16–234:4.) She noted that Compean made comments about her disability almost every time they interacted and treating it as an "ongoing joke." (*Id.* 240:14–241:17.) Among other comments, she claims that her manager asked her "why are you always sick?," characterized sick days as "vacation days," insinuated that she was falsifying her illness,

11

questioned her ability to finish her work as assigned, and told her she had to "work past" her symptoms. (*Id.* 231:22–234:17, 231:23–232:3, 234:21–236:14, 240:21–241:23.) Importantly, these facts are intertwined with the alleged remarks that were sufficient to present a genuine issue of material fact as to Jackson's FMLA retaliation claim. Compean's alleged remarks disparaging Jackson's condition, viewed alongside her manager's warning that taking FMLA to accommodate her condition would "stunt her growth" at Sprint, (*id.* 236:18–240:11), could be found to raise an inference of discriminatory motive. *Cf. Glunt v. GES Exposition Servs., Inc.*, 123 F. Supp. 2d 847 (D. Md. 2000) (holding that an employee's testimony about manager's "pregnancy-based comments" was sufficient to sustain a prima facie case). And as the putative remarks were made during the three-month interval between Compean's arrival as manager in December 2018 and Jackson's termination in February 2019, their temporal proximity to her termination may suffice to establish causation. *Corbett v. Richmond Metro Transp. Auth.*, 203 F. Supp. 3d 699, 706 (E.D. Va. 2016). Accordingly, Jackson has presented a prima facie case for wrongful discharge.[5]

In reaching this revised judgment, this Court finds the facts of the case and the nature of Jackson's allegations critical. The comments at issue here are distinct from the conclusory assertions addressed in *Evans* and *Mackey*, which were grounded in opinion and speculation: In *Evans*, the plaintiff offered "unsubstantiated allegations and bald assertions concerning her own qualifications and the shortcomings of her co-workers." 80 F.3d at 960. In *Mackey*, the plaintiff offered her "self-serving" opinion that her manager struggled to relate to women in management, and that her transfer had been causally connected to the filing of an

---

[5] Although Compean denies making these comments, (Compean Dep. 62:19–63:3), this Court may not select between Compean's testimony and Jackson's at the summary judgment stage.

EEOC complaint. 360 F.3d at 469–70. Several courts in this Circuit have found, consistent with *Mackey* and *Evans*, that conclusory opinions and assertions of discrimination may not suffice to establish a prima facie case of discrimination. *See, e.g.*, *Yeboah-Kankam v. Prince William Cnty. Sch. Bd.*, No. 117CV549LMBJFA, 2017 WL 6758449, at *9 (E.D. Va. Dec. 29, 2017) (noting plaintiff "admitted that he had no evidence on which to base his allegations" that the complaints against him were "'fabricated' or the result of discrimination"); *Fudge v. Sentinel Off. Payroll Corp.*, No. 2:13-CV-01840-CWH, 2015 WL 5682639, at *2 (D.S.C. Sept. 25, 2015); *Wright v. Arlington Cnty., VA*, No. CIV.A.03-577-A, 2004 WL 3059544, at *2 (E.D. Va. Mar. 1, 2004). Under the limited facts of this case, Jackson offers no such speculation. She does not rely on conclusory claims regarding her employer's motives, her co-workers' qualifications, or her manager's personality. Rather, she offers testimony based on personal experience, discussing specific alleged comments by her managers "that a jury could credit as having been made and as evidence of discriminatory animus." (Mot. Reconsideration 2–3.) Under the facts of this case, and viewed alongside Jackson's evidence of FMLA retaliation, Jackson has successfully established a prima facie case for discriminatory termination in violation of the ADA.

Unlike in *Evans*, Sprint fails to rebut this prima facie case. *Cf. Evans*, 80 F.3d at 960 ("Evans's unsubstantiated allegations and bald assertions concerning her own qualifications and the shortcomings of her co-workers fail to disprove TAS's explanation or show discrimination."). To meet its burden to offer "a legitimate, non-discriminatory reason for its employment action," *id.* at 959, Sprint argues only that Jackson was terminated only due to her "repeated attendance and performance issues." (Mem. Supp. 18.) As discussed at length

above, and in this Court's summary judgment opinion, Jackson has generated enough evidence that a reasonable factfinder could conclude that these justifications are pretextual. Compean and Pierce gave "inconsistent post-hoc explanations" for her termination, with conflicting details as to why she was fired and how many times she was allegedly absent. (Mem. Op. 18.) Moreover, Jackson has offered evidence that Sprint may have violated its progressive discharge policies: Although Compean represented that Jackson had received all five progressive discipline documents prior to her termination, the only corrective action material on the record is a "First Level-Oral/Verbal Notice" issued February 22, 2019—the same day that Jackson was fired. (Mem. Op. 19–20.) "Viewed in the light most favorable to Jackson, the absence of a Written Warning or Final Written Warning and the timing of this 'First Level Oral/Verbal Notice' creates a genuine dispute as to whether Compean's representations in his February 20, 2019 email are false, and [Sprint's] reasons for Jackson's discharge are pretextual." (Mem. Op. 20.) Accordingly, Sprint's Motion for Summary Judgment is hereby **DENIED** as to Count II.

## CONCLUSION

For the foregoing reasons, it is this 4th day of October, 2022, hereby **ORDERED** that:

1. Plaintiff's Motion for Reconsideration (ECF No. 44) is **GRANTED**, and Defendant's Motion for Summary Judgment (ECF No. 37) is hereby **DENIED** as to Count II;

2. Defendant's Motion for Reconsideration (ECF Nos. 45, 46) is **DENIED**;

3. Plaintiff's Motion to Strike (ECF No. 47) is **DENIED**; and

4. The Clerk of the Court shall transmit a copy of this Order to the parties.


Date: October 4, 2022                                          _____/s/_____
                                                               Richard D. Bennett
                                                               United States Senior District Judge